UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-206-KSF

CORNING, INC., *et al.*                                                                                PLAINTIFFS

V.                                    **OPINION & ORDER**

DHL HOLDINGS (USA), INC.                                                                        DEFENDANT

      AND

CIVIL ACTION NO. 06-208-KSF

DHL HOLDINGS (USA), INC.                                                                         PLAINTIFF

V.

THE EXPEDITING CO., *et al.*                                                                      DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of plaintiff Corning, Inc. ("Corning"), for summary judgment [DE #28] and the cross-motion of defendant DHL Holdings (USA), Inc. ("DHL") for summary judgment [DE #47]. Additional motions for summary judgment as between DHL and its subcontractors will be considered separately.

I.      **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The facts of this matter are fairly straightforward as between plaintiff Corning and defendant DHL Holdings (USA), Inc. ("DHL"). At its plant in Harrodsburg, Kentucky, Corning manufactures flat glass for use in LCD screens and monitors. On September 5, 2003, Corning and DHL entered into a "Transportation Agreement" that governed the terms of all of Corning's shipments to be carried by DHL (hereinafter the "Agreement"). According to the Agreement, it

shall be construed and enforced according to the laws of New York.

In June of 2004, Corning delivered to DHL two types of glass to be shipped to Japan: five (5) crates of "Generation 6" glass containing 230 sheets of glass each and six (6) crates of "Generation 4" glass containing 500 sheets each (collectively referred to as the "Glass Cargo"). Each type of glass was approximately 0.7 mm thick, the same width as a mechanical pencil lead. The Glass Cargo was loaded by Corning personnel at the Harrodsburg plant onto a trailer owned by Frate, Inc. ("Frate"), a subcontractor of DHL. Corning maintains that the Glass Cargo was packaged properly and was delivered in sound condition by Corning to Frate. DHL issued Corning Master Air Waybills or through air waybills[1] ("Air Waybills") that governed transportation of the Glass Cargo from the Harrodsburg warehouse to its ultimate destination in Narita, Japan.

DHL engaged subcontractors to transport the Glass Cargo. Frate (which is not a party to any action before this Court) transported the Glass Cargo from Harrodsburg, Kentucky, to DHL's facility in Erlanger, Kentucky, where DHL personnel unloaded it and re-loaded it onto another tractor-trailer for transport to the O'Hare International Airport near Chicago, Illinois. DHL subcontracted for The Expediting Company, Inc. ("TEC"), one of the defendants in DHL's related subcontractor action, to transport the Glass Cargo from Erlanger to Chicago. Somewhere between Erlanger and Chicago, TEC subcontracted with another carrier, Ideal Deliveries, Inc. ("Ideal"), to transport the Glass Cargo to Chicago.

The vehicle carrying the Glass Cargo overturned in Cedar Creek, Indiana, while being

---

[1] A "through waybill" apparently is a single bill of lading that covers receipt of cargo from one point to another and involving multiple modes of transportation and/or multiple carriers.

driven by one of Ideal's employees. Ideal admits that its driver was 100% responsible for the accident and that the accident was preventable – i.e., there were no road conditions that contributed to the accident and no other vehicles involved.

On July 7, 2004, the Glass Cargo was returned to Corning's Harrodsburg facility and inspected by Corning personnel. Some crates had literally almost no glass remaining in them and some were too dangerous to open because of the extensive damage. Corning refused to accept the Glass Cargo because it was too dangerous to handle and the crates were returned to the trucker. The Glass Cargo was determined to be a total loss.

Corning and its subrogated insurer, CNA Insurance Company, Ltd., originally filed suit in 2006 in the United States District Court for the Southern District of New York for breach of contract, bailment, and negligence arising out of the damaged Glass Cargo. DHL filed a motion to dismiss and/or to transfer venue and the New York district court ultimately ruled that the matter should be transferred to this Court. Thereafter, DHL filed a separate case against its subcontractor, TEC, and TEC's subcontractor, Ideal, which was consolidated into the present case. Corning seeks compensatory damages in the invoice amount of 29,562,808 ¥ or approximately $274,047.23.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. The Parties' Arguments

In its motion, Corning asks the Court to enter summary judgment in its favor for breach of the contract of carriage in the amount of the full invoice value. It argues that regardless of whether New York state law or federal common law is applied, DHL is liable for the damage caused to the Glass Cargo and has no defense under applicable law, as the accident did not

involve an act of God or the public enemy or an act of the owner of the goods.[2]

DHL responds that either the Agreement or the Air Waybills require a finding of negligence on the part of DHL before any liability attaches. Because the evidence shows that DHL was in no way negligent in its handling of the Glass Cargo, summary judgment should be entered in its favor. It is undisputed that Ideal was 100% responsible for the damage and DHL had no knowledge of or relationship with Ideal. DHL is simply not responsible for the acts or omissions of Ideal. Further, Corning has not met its burden of proving that the Glass Cargo was properly packed and, thus, that Corning was not contributorily negligent. Based on the above, DHL seeks the entry of summary judgment in its favor finding no negligence on its part and no liability to Corning for the damaged shipment.

Corning replies that DHL's cross-motion for summary judgment should be stricken as untimely. On the merits, it argues that DHL is liable for the loss occasioned by the negligence of the underlying sub-carrier Ideal, as DHL was the common carrier that issued a through bill of lading. Thus, under both the Air Waybills and federal common law, DHL is liable to Corning for Ideal's negligence in handling the Glass Cargo. Corning also argues that DHL has not met its burden of showing contributory negligence on Corning's part, and there is no such evidence. Corning also disputes DHL's assertion that DHL loaded the Glass Cargo onto TEC's trailer in the same manner it was loaded by Corning.[3]

---

[2] Corning also asserts that this controversy is not governed by the Carmack Amendment to the ICC Termination Act, 49 U.S.C. § 14706 et seq.; the Warsaw Convention, 49 U.S.C. § 40105; or the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq. DHL does not dispute this, so the Court assumes without discussion that these statutes do not apply.

[3] Corning also responds to TEC's argument in a separate motion that Corning's liability is limited to $0.50 per pound for surface moves and warehousing as stated in the

B. **Summary Judgment Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343.

---

Agreement, as opposed to $9.07 per pound as stated in the Air Waybills. Corning argues that the "surface move" limitation in the Agreement does not apply because there is no question the shipment of the Glass Cargo at issue in this case is properly considered to be "international airfreight." Because the Glass Cargo was shipped using through Air Waybills and was destined for international air carriage to Japan, it is irrelevant that the loss occurred during the inland truck shipment leg of the trip. Corning also points out that the $9.07 limitation is irrelevant because the total invoice value being sought is less than what would be allowed under that limitation. The question of this limitation will be addressed separately when the Court considers the remaining pending motions for summary judgment.

"The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

    **C.**    **Analysis**

Before considering the merits, the Court first must determine what law to apply to the plaintiff's claims. The Agreement as between Corning and DHL expressly states that it "shall be construed and enforced in accordance with the laws of the State of New York without reference to the choice of law provisions of any jurisdiction." (Pl. Mot. S.J., Ex. E, ¶ 12.) Corning asserts that New York law governing cargo claims against common carriers is consistent with and essentially the same as federal common law and therefore either applies. DHL does not address this question in its response. Therefore, the Court may apply either New York state law or, if not in conflict, federal common law to the present claims.

The federal common law relating to common carriers is well settled. The general rule is that a common carrier is not an absolute insurer, but "is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." Missouri Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 137 (1964) (describing the common-law rule) (citations omitted); see also E. Gerli & Co. v. Compagnie Generale Transatlantique, 230 N.Y.S. 282, 284 (1928) (noting that nondelivery at the port of destination is presumptive evidence of the carrier's negligence). In cases governed by federal common law, the

airbill, receipt, or bill of lading issued by the carrier serves as a "contract for carriage."  <u>Sam L. Majors Jewelers v. ABX, Inc.</u>, 117 F.3d 922, 930 (5th Cir. 1977) (citations omitted).

The only question to be decided in the present motions is whether Ideal's admission that it was 100% at fault for the damage to the Glass Cargo precludes Corning from recovering damages from DHL, its carrier, when there was presumably no negligence on DHL's part.  The answer to that question under both federal common law and the Air Waybills is no.

Regarding the Air Waybills at issue, the terms and conditions state that the "Carrier is not liable to the shipper . . . unless such damage is proved to have been caused by the negligence or wilful fault of Carrier and there has been no contributory negligence of the shipper . . . ."  (Pl. Mot. S.J., Ex. F, ¶ 4(a).)  DHL asserts that because any damage was caused by Ideal, and not DHL, this provision has not been satisfied and Corning cannot recover from DHL.  However, this argument ignores and must fail in light of the definition of "Carrier" contained in the Air Waybills:

> "Carrier" includes the carrier or forwarder issuing this air waybill ***and all carriers that carry the goods hereunder or perform any other services related to such air carriage***.

(<u>Id.</u> ¶ 1 (emphasis supplied).)  The Air Waybills also provide that "Carrier may without notice substitute alternate carriers or mode of transport."  (<u>Id.</u> ¶ 5.)  These provisions make clear that the term "Carrier" under the waybills includes Ideal and, therefore, DHL is liable to Corning for the damage to the Glass Cargo caused by Ideal.

DHL is also liable to Corning under federal common law.  Corning has established a *prima facie* case of liability against DHL for damage to the Glass Cargo by showing (1) that the Glass Cargo was delivered to DHL in good condition;(2) that the Glass Cargo was returned to

Corning in a damaged condition and never made it to the consignee; and (3) the amount of damages. Elmore & Stahl, 377 U.S. at 138. "Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." Id. (citations omitted).

Corning has proven its *prima facie* case of DHL's liability. In response, DHL suggests that it was an act of the shipper – Corning's packaging of the Glass Cargo – that caused the damage. In other words, DHL argues it is relieved of liability because Corning was contributorily negligent. This argument must be rejected. Under the authorities cited above, DHL bears the burden of proof on this issue and, having offered no proof at all, DHL has failed to sustain it.

### III.   CONCLUSION

DHL does not contest the invoice amount of damages sought by Corning. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1)   Corning's motion for summary judgment [DE #28] is GRANTED;

(2)   DHL's cross-motion for summary judgment [DE #47] is DENIED;

(3)   DHL is liable to Corning in the amount of $274,047.23 for the damaged Glass Cargo;

(4)   judgment in favor of Corning will be entered separately in the matter of Corning, Inc., *et al.* v. DHL Holdings (USA), Inc., Civil Action No. 06-206-KSF (E.D. Ky.);

(5)   the matter of DHL Holdings (USA), Inc. v. The Expediting Com., *et al.*, Civil Action No. 06-208-KSF (E.D. Ky.), shall go forward separately hereafter and all docketing shall henceforth take place in that case;

(6)   the matter of Corning, Inc., *et al.* v. DHL Holdings (USA), Inc., Civil Action No. 06-206-KSF (E.D. Ky.), is STRICKEN from the active docket of the Court; and

(7)  this is a final and appealable order;

This October 25, 2007.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**